THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

EUGENE MANNACIO, on behalf of himself
and all others similarly situated,

                Plaintiff,

vs.

SOVEREIGN LENDING GROUP
INCORPORATED,

                Defendant.

Case No. 3:22-cv-05498-RSM

**PLAINTIFF'S UNOPPOSED
MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT**

**NOTED FOR CONSIDERATION:
AUGUST 9, 2023**

## I.      INTRODUCTION

Plaintiff Eugene Mannacio has alleged that he received unsolicited telephone calls from Sovereign Lending Group Incorporated ("Sovereign Lending") after he had registered his phone number on the national Do Not Call Registry. Plaintiff alleges that Sovereign Lending made these calls as part of a campaign to market its mortgage services without first obtaining the consent of the call recipients.[1]

Plaintiff reached a classwide settlement agreement with Sovereign Lending on behalf of 19,648 similarly-situated persons who received calls and whose contact information Sovereign Lending received from The Money Source Inc. ("Settlement Class Members").

---

[1] Sovereign Lending maintains that it did not violate the Telephone Consumer Protection Act but does not oppose this motion for settlement purposes.

- 1
**Plaintiff's Unopposed Motion for Preliminary
Approval of Class Action Settlement**

Plaintiff seeks the Court's preliminary approval of the settlement and for notice to Settlement Class Members. The settlement requires Sovereign Lending to pay $500,000 to establish a non-reversionary Settlement Fund. Settlement Class Members who submit valid claims for cash will receive payments on a *pro rata* basis after payment of administrative costs, a service payment, attorneys' fees, and litigation costs approved by the Court.

That is, the Settlement Fund will also be used to pay a service payment to the Plaintiff, attorneys' fees and litigation costs, and class administration expenses approved by the Court. Plaintiff Eugene Mannacio will request a service payment of $10,000. Counsel will request an award of attorneys' fees and costs totaling no more than $166,666.67, and costs of $20,000.00[2]. Settlement Administrator Kroll Administration has estimated that it can administer the settlement for $81,780.00. Declaration of Anthony Paronich ("Paronich Decl.") ¶ 5-7.

The amount each claimant will receive depends upon the number of valid claims submitted. If the requested administration costs, attorneys' fees, litigation costs, and a service payment are approved, the net fund available to pay settlement awards will be approximately $221,553.33. If ten percent (10%) of Settlement Class Members timely and validly file claims, each is expected to receive approximately $115. This result exceeds those achieved in TCPA settlements across the country, as Plaintiff describes below.

The settlement is fair, adequate, and reasonable. Accordingly, Plaintiff respectfully requests that the Court take the following initial steps in the settlement approval process: (1) provisionally certify the proposed Settlement Class; (2) appoint Turke & Strauss LLP and Paronich Law, P.C. as Class Counsel; (3) designate Eugene Mannacio as the class representative; (4) grant preliminary approval of the settlement; (5) approve the proposed notice plan; (6) appoint Kroll Settlement Administration, LLC to serve as the Settlement Administrator; and (7) schedule the final fairness hearing and related dates.

---

[2] These costs are estimated as the costs of attending final approval are currently unknown.

- 2

**Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement**

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Sovereign Lending is a company serving mortgage and refinancing clients. *Mannacio v. Sovereign Lending Group Inc.*, No. 21-cv-9193 (N.D. Cal.), Doc. 1. Plaintiff alleges that to reach customers, Sovereign Lending uses in telemarketing. Plaintiff Eugene Mannacio, whose telephone number has been listed on the National Do Not Call Registry since 2003, alleges that he received five unsolicited telemarketing calls from Sovereign Lending between October 10 and October 20, 2021. *Id.*, ¶¶20-24. As a result, on November 29, 2021, Plaintiff Mannacio filed a putative class action complaint (the "Complaint") in the United States District Court for the Northern District of California against Sovereign Lending – *Mannacio v. Sovereign Lending Group Inc.*, No. 21-cv-9193 (N.D. Cal.), Doc. 1. The Complaint alleged that Sovereign Lending violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") by, *inter alia*, placing unsolicited telemarketing calls to Plaintiff and members of the putative class on residential telephone numbers. *Id.* Defendant answered the Complaint on February 18, 2022, and denied Plaintiff's allegations. *Mannacio*, No. 21-cv-9193 (N.D. Cal.), Doc. 24.

The parties then stipulated to transfer the case to this Court, receiving the civil action number 22-cv-05498 ("the Action"). *See Mannacio*, No. 21-cv-9193 (N.D. Cal.), Docs. 43-44; *Mannacio v. Sovereign Lending Group, Inc.*, No. 22-cv-05498 (W.D. Wash.), Doc. 45. Following the transfer, the parties conferred and proposed a discovery plan and schedule. *Mannacio,* No. 22-cv-05498 (W.D. Wash.) Doc. 57. The Court then entered a scheduling order setting case deadlines, including setting the close of fact discovery as October 10, 2023. *Id.*, Doc. 59. The parties proceeded with written discovery and document production over the subsequent months. Paronich Decl., ¶2. That discovery revealed the key facts needed to evaluate the merits of Plaintiff's claims, including the call records at issue and Sovereign Lending's TCPA policies and practices. *Id.*

**Plaintiff's Unopposed Motion for Preliminary**
**Approval of Class Action Settlement**

After pursuing discovery, the parties mutually agreed to explore early resolution of this matter through private mediation. On May 18, 2023, the parties engaged in a day-long, arms-length mediation session with Judge S. James Otero (Ret.) from JAMS. *Id.* ¶3. Although the parties did not reach a settlement during mediation, they continued their negotiations in the following days, coming to an agreement on the material terms of a class settlement and subsequently executing the Settlement Agreement on August 4, 2023. *Id.* ¶3.

## III. SETTLEMENT TERMS

The complete Settlement Agreement and Release is attached as Exhibit 1 to the declaration of Anthony Paronich filed in support of this motion.

**A.    The proposed Settlement Class.**

The proposed Settlement Class is defined as:

> All persons or entities within the United States to whom Defendant or a third party acting on its behalf: (a) made one or more telephone calls, including while the call recipient's number was on the National Do Not Call Registry; and/or (b) made one or more calls after asking Defendant or a third party acting on Defendant's behalf to stop calling when that telephone number was obtained by the Defendant from The Money Source Inc.

Settlement Agreement § 1.29. The proposed settlement class includes 19,648 individuals.

**B.    Monetary relief.**

Sovereign Lending will pay $500,000 into a non-reversionary Settlement Fund used to make *pro rata* payments to each Settlement Class Member, and, if approved by the Court, a service payment to the Class Representative in the amount of $10,000, attorneys' fees of $166,666.67, and costs of approximately $20,000, and settlement administration costs estimated at $81,780.00. Settlement Agreement § 1.32.

1.    <u>Payments to Settlement Class Members</u>

After court-approved expenses for Settlement Administration, Plaintiff's service

payment, and attorneys' fees and costs are deducted from the Settlement Fund, the remainder will be used to compensate Settlement Class Members ("Net Settlement Fund"). Settlement Agreement § 2.1.2. Authorized Claimants will receive a *pro rata* share of the Net Settlement Fund. *Id*. § 3.

There are 19,648 Settlement Class Members. If ten percent (10%) of Settlement Class Members submit valid claims, each Authorized Claimant will be paid approximately $115. The amount each Settlement Class Member receives depends on the number of timely and valid claims submitted by Settlement Class Members. The amount will increase if the number of claims is less than ten percent. The amount will decrease if the number of claims is higher than ten percent. Paronich Decl. ¶ 4. In other words, Sovereign Lending will pay every verified claim and every cent committed to this settlement.

2.    <u>Settlement administration expenses.</u>

The Settlement Agreement provides that any settlement administration and notice costs will be paid from the Settlement Fund. *Id*. § 2.1.5. Counsel propose Kroll Settlement Administration as the Settlement Administrator, subject to Court approval. Kroll Settlement Administration estimates that it can carry out the Notice plan for $81,780.00. Paronich Decl. ¶ 5. Kroll Settlement Administration will obtain addresses for class members, disseminate the proposed postcard notice by mail; establish and maintain a Settlement Website; establish a toll-free number and respond to Settlement Class Member calls; process, log, and review exclusion requests; administer the Settlement Fund; disburse Court-approved attorneys' fees, costs, and service payment, and distribute the Net Settlement Fund to Settlement Class Members. Settlement Agreement § 4.

3.    <u>Class Representative's service payment.</u>

Class Representative Eugene Mannacio will request a service payment of $10,000, to recognize his service to the Settlement Class. Paronich Decl. ¶ 6. Mr. Mannacio assisted in drafting the complaint, participated extensively with their counsel in discovery and was available

**Plaintiff's Unopposed Motion for Preliminary**
**Approval of Class Action Settlement**

for mediation. *Id.*

    4.    <u>Attorneys' fees and litigation costs.</u>

Counsel will request that the Court approve an award of litigation costs of approximately $20,000 and reasonable attorneys' fees of $166,666.67. Paronich Decl. ¶ 7. Counsel will file a motion requesting approval of an attorneys' fee and cost award to compensate and reimburse them for the work already performed in this case and the work remaining to be performed in connection with the settlement. Settlement Agreement §§ 2.1.4.

**C.    Release.**

The release is appropriately tailored to the claims made in the case. In exchange for the benefits provided by the settlement, Settlement Class Members will release any claims that arise out of concern or relate to the TCPA and other related state laws regarding telemarketing, as of the date of a final Court order approving the Settlement and dismissing the case with prejudice. *Id.* § 1.23. The release does not extend beyond claims held by the 19,648 Settlement Class Members. *Id.* §§ 1.29, 4.2

**D.    Notice Plan.**

The parties propose a Notice Plan that includes mailed notice to Settlement Class Members using address information Kroll Settlement Administration locates and that can be updated through the National Change of Address system or similar system. The Notice Plan is described in section IV.C below.

### IV.  ARGUMENT AND AUTHORITY

**A.    The Settlement Class should be preliminarily certified for settlement purposes.**

The Settlement Class preliminarily satisfies the requirements of Rule 23(a) and (b)(3). The Rule 23(a) requirements are numerosity, commonality, typicality and adequacy. Rule 23(b)(3) requires Plaintiff to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

- 6

**Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement**

controversy." "[T]he aspects of Rule 23(a) and (b) that are important to certifying a settlement class are 'those designed to protect absentees by blocking unwarranted or overbroad class definitions.'" *In re Hyundai and Kia Fuel Econ. Litig*., 926 F.3d 539, 558 (9th Cir. 2019) (citation omitted). "The focus is 'on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id*. (citation omitted).

    1.    <u>The Settlement Class satisfies the requirements of Rule 23(a)</u>

The proposed Settlement Class has 19,648 members, which satisfies the numerosity requirement. *See Celano v. Marriott Int'l Inc*., 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least 40 members).

The Settlement Class also satisfies commonality, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). There are several common questions here, including the source of the class members' phone numbers, whether Sovereign Lending and its agents called numbers on the National Do Not Call registry, and whether Sovereign Lending would be subject to the treble statutory damages under the TCPA. The answers to these questions turn on common evidence and can be fairly resolved for all class members at once. *See, e.g., Kristensen v. Credit Payment Servs*., 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) (finding that questions of TCPA liability satisfied commonality); *Whitaker v. Bennett Law, PLLC*, No. 13-3145, 2014 WL 5454398, at *5 (S.D. Cal. Oct. 27, 2014) (finding commonality satisfied where the central issue was whether the defendant made calls that violated the TCPA).

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of Settlement Class members because they arise from the same course of alleged conduct: telemarketing calls placed to residential lines promoting Sovereign Lending's goods and services. *See, e.g., Whitaker*, 2014 WL 5454398, at *5 (finding typicality satisfied because each

- 7

**Plaintiff's Unopposed Motion for Preliminary**
**Approval of Class Action Settlement**

class member's claim "revolves exclusively around [the defendant's] conduct as it specifically relates to the alleged violations of the TCPA"); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 569 (W.D. Wash. 2012) (finding typicality satisfied where the plaintiff's claims, "like all class members' claims, arise from text marketing campaigns commissioned by Papa John's franchisees and executed by the same marketing vendor …").

Finally, the adequacy requirement is satisfied when the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make this determination, "courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d at 566 (citation omitted). Plaintiff has no identified conflicts of interest with the other proposed Settlement Class Members and has demonstrated his commitment by actively participating in the litigation. He and Class Counsel will vigorously represent the Settlement Class.

2. The Settlement Class satisfies the requirements of Rule 23(b)(3)

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In the context of a certification of a settlement class, predominance is "readily met" where "class members were exposed to uniform . . . misrepresentations and suffered identical injuries within only a small range of damages." *See In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d at 559. As to the defined class, common questions predominate over any questions affecting only individual members. The questions common to all Settlement Class members include whether Sovereign Lending made telemarketing calls to Settlement Class Members' phone numbers registered to the National Do Not Call registry, whether Sovereign Lending had consent to make those calls, and whether

**Plaintiff's Unopposed Motion for Preliminary**
**Approval of Class Action Settlement**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Sovereign Lending's alleged violations of the TCPA were knowing and willful. These questions can be resolved using the same evidence for all class members and is exactly the kind of predominant common issue that makes class certification appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) ....'" (citation omitted)).

Superiority is also satisfied because resolution of thousands of the relatively small-value claims in this one action is far preferable to a multitude of individual lawsuits and promotes consistency and efficiency of adjudication. Fed. R. Civ. P. 23(b)(3). Classwide resolution is the only practical method of addressing the alleged TCPA violations at issue in this case. There are over 19,000 Settlement Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").

### B.    The proposed settlement should be preliminarily approved.

The court's role at the preliminary approval stage is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation omitted); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015).

Under Rule 23(e)(2), a district court considers whether (A) the class representatives and their counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided by the settlement is adequate, taking into account: (i) the costs,

- 9
**Plaintiff's Unopposed Motion for Preliminary**
**Approval of Class Action Settlement**

risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (v) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

These factors are similar to those previously identified by the Ninth Circuit, including: (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

Plaintiff will address the factors outlined by Rule 23(e)(2) and the Ninth Circuit, many of which overlap.

1.   The settlement is the result of arm's-length, non-collusive negotiations.

The parties negotiated the settlement at arm's length both in a mediation with a third-party mediator and then over the course of several days after the mediation. "Arm's length negotiations conducted by competent counsel constitute *prima facie* evidence of fair settlements." *Ikuseghan v. Multicare Health Sys.*, No. 3:14-cv-05539-BHS, 2016 WL 3976569, *3 (W.D. Wash. July 25, 2016); *see also Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 852 (1999) ("[O]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining.").

The negotiations were conducted with the assistance of Judge S. James Otero (Ret.) from JAMS and included a formal mediation. *See Ruch v. AM Retail Group, Inc.,* No. 14-cv-05352-MEJ, 2016 WL 1161453, at *11 (N.D. Cal. Mar. 24, 2016) (holding that the "process by which

the parties reached their settlement," which included "formal mediation … weigh[ed] in favor of preliminary approval"); Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment ("the involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests").

Counsel negotiated the settlement with the benefit of many years of prior experience and a solid understanding of the facts and law of this case, having conducted significant fact discovery prior to the mediation. Paronich Decl. ¶ 8. Counsel have extensive experience litigating and settling class actions, and consumer class actions challenging telemarketing practices in particular. Paronich Decl. ¶ 9; Strauss Decl. ¶¶ 2, 5. The recommendation of experienced counsel weighs in favor of granting approval and creates a presumption of reasonableness. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.") (citation omitted)).

No "red flags" suggest that Plaintiff's counsel allowed their own self-interest to infect settlement negotiations—they will not receive a disproportionate portion of the settlement, there is no "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, and the Parties agree that any fees not awarded to counsel will be paid to the class. *See In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d at 569 (discussing "red flags" that arise in class settlements). Indeed, because counsel will be paid from the same Settlement Fund as Settlement Class Members, they were incentivized to negotiate the largest fund possible, and the Court has ultimate discretion over the amount of the attorneys' fee award after reviewing counsel's motion. Again, any requested fees or costs not approved by the Court will be distributed to Settlement Class Members. Settlement Agreement §§ 1.32, 3.

2.    <u>The relief provided by the settlement is adequate considering the strength of Plaintiff's case, the risk of certifying and maintaining a class action through trial, and the risk, cost, and delay of trial and appeal.</u>

Sovereign Lending has agreed to pay $500,000 to settle Plaintiff's and Settlement Class Members' claims against them. The Settlement Fund will be used to pay the costs of notice and settlement administration, attorneys' fees, costs and expenses, and the service payment to the Plaintiff. Once those amounts are paid, the remainder of the Settlement Fund—approximately $221,553.33 (pending approval of the Court of Plaintiff's request for attorneys' fees, costs and expenses, and the service payment)—will be distributed to Settlement Class Members who timely file a claim form. This amount is extraordinary when compared to other TCPA class actions, and even more so given the risks and delay of continued litigation, as Plaintiff elaborates below.

Plaintiff is confident in the strength of his case but also pragmatic about the risks inherent in litigation and various defenses available to the Defendant. Paronich Decl. ¶ 10. First, the Defendant maintains that the Plaintiff and the Settlement Class Members are not entitled to recover because they consented to be called on their phone numbers by providing their numbers to Sovereign Lending's agents in various ways. Paronich Decl. ¶ 11. Consent is an affirmative defense for which the Sovereign Lending carries the burden of proof. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017) ("We think it plain from the statutory language that prior express consent is an affirmative defense, not an element of a TCPA claim…."). Plaintiff disputes that Sovereign Lending could meet this burden at trial; but if the trier of fact disagreed with Plaintiff on this legal issue, the Settlement Class would receive nothing. Paronich Decl. ¶ 11.

Sovereign Lending's consent defense also created the risk that a motion to certify under Rule 23(b)(3) would not succeed. Paronich Decl. ¶ 12. Courts have reached different results on the application of consent to class certification. *Compare, e.g., Blair v. CBE Grp., Inc*., 309 F.R.D. 621, 631 (S.D. Cal. 2015) (denying certification where "extensive individual factual

- 12

**Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement**

inquiries" were required "to determine whether a particular class member provided express consent"), *with Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 311 (S.D. Cal. 2015) (granting certification where questions of fact and law predominate over individualized issues).

Finally, litigating this case to trial and through any appeals would be expensive and time-consuming and would present risk to both parties. The settlement, by contrast, provides prompt and certain relief for Settlement Class Members. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." (citation omitted)).

3.    <u>The settlement compares favorably to other TCPA class settlements.</u>

The estimated per-claim payment of $115 exceeds payments in other TCPA settlements approved in this circuit and across the country. *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at  6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98); *Adams v. AllianceOne Receivables Mgmt., Inc*., No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40); *Kramer v. Autobytel, Inc., et al*., No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) (approving TCPA settlement providing for a cash payment of $100 to each class member); *Estrada v. iYogi, Inc.,* No. 2:13-01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Malta v. Fed. Home Loan Mortg. Corp.*, 10-CV-1290-BEN (S.D. Cal.) (after final approval, each of the 120,547 claimants that made a timely and valid claim as well as the 103 claimants that made a late claim received the sum of $84.82); *Kramer v. B2Mobile*, 10-CV2722-CW (N.D. Cal.) (in TCPA settlement each claimant was to be paid $100), *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal., 2014) (approving TCPA settlement where claimants were estimated to receive $20 to $40); *Desai v. ADT Sec. Servs., Inc*., Case No. 1:11-cv-01925, Dkt. No. 229 (N.D. Ill. Feb. 14, 2013) (estimating payments between

$50 and $100); *Rinky Dinky v. Elec. Merchant Sys*., No. C13-1347-JCC, Dkt. No. 151 (W.D. Wash. Apr. 19, 2016) ($97 payments); *In re Capital One Tel. Consumer Prot. Act Litig*. (*In re Capital One*), 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (approving settlement where each class member received $34.60 per claimant). This significant relief to the Settlement Class supports preliminary approval.

        4.    <u>The settlement will be fairly distributed to Settlement Class Members.</u>

The method for distributing the Settlement Fund to Settlement Class Members is simple, straightforward, and equitable. To obtain settlement relief, a Settlement Class Member need only complete a simple claim form with his or her name, contact information, and the telephone number on which he or she received the allegedly unlawful calls. Settlement Class Members may submit claims online through the Settlement Website or by mail. Settlement Class Members will be treated equitably relative to each other. Each Settlement Class Member who submits a timely and valid claim will receive an equal share of the Settlement Fund after approved deductions for approved administrative costs, attorneys' fees, costs, and a service payment.

Plaintiff intends to request Court approval of a service payment of $10,000. The Ninth Circuit has explained that these types of awards are "intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 943 (9th Cir. 2015) (*quoting Rodriguez*, 563 F.3d at 958-59). The factors courts consider include the class representative's actions to protect the interests of the class, the degree to which the class has benefitted from those actions, the time and effort the class representative expended in pursuing the litigation, and any risk the class representative assumed. *Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003). Plaintiff devoted significant time assisting counsel in this case over the past several years, including assisting with development of the case participating in discovery and the mediation. Paronich Dec. ¶ 6. Awards of $10,000 are reasonable and in line with awards approved by federal courts

**Plaintiff's Unopposed Motion for Preliminary**
**Approval of Class Action Settlement**

in this district. *See, e.g., Pelletz v. Weyerhaeuser Co.,* 592 F. Supp. 2d 1322, 1329-30 & n.9 (W.D. Wash. 2009) (collecting cases approving awards ranging from $5,000 to $40,000).

No agreements have been made in connection with the proposed Settlement other than the Settlement Agreement. *See* Fed. R. Civ. P. 23(e)(3).

5.    Counsel will request approval of a fair and reasonable fee.

Counsel intend to request an award of 33% of the Settlement Fund, or $166,666.67, in reasonable attorneys' fees, as well as reimbursement for the approximately $20,000 in out-of-pocket costs they incurred. The Ninth Circuit has recognized that the percentage-of-the-fund method is the appropriate method for calculating fees when counsel's effort has created a common fund. *See, e.g., In re Bluetooth,* 654 F.3d at 942. Factors bearing on the reasonableness of the award, and any departure from the benchmark include (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *see also Ikuseghan v. Multicare Health Sys.,* No. C 14-5539 BHS, 2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016) (awarding a fee of 30% of a $2.5 million settlement fund after surveying fee awards in TCPA class settlements in the Ninth Circuit and finding that more than half of the awards were at the 25% benchmark or higher). Counsel's lodestar may also be considered in evaluating the reasonableness of a percentage award. *Vizcaino*, 290 F.3d at 1050-51.

Counsel will file a motion for attorneys' fees, costs, and expenses addressing the factors courts consider when awarding attorneys' fees in class action cases and explaining why an upward adjustment from the benchmark is warranted in this case. The motion will also detail the costs incurred, which include the costs that Plaintiff's counsel paid to their experts to analyze the calling data, general litigation expenses, and mediation expenses. The motion will be filed at least three weeks before the deadline for class members to opt-out of or object to the settlement and will be posted on the Settlement Website. Fed. R. Civ. P. 23(h); *In re Mercury Interactive*

*Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010).

      6.    <u>The reaction of Settlement Class Members to the proposed settlement.</u>

Settlement Class Members have not yet had an opportunity to react to the proposed settlement because notice has not yet gone out. Plaintiff will provide the Court with information about Settlement Class Members' reaction in their motion for final approval of the settlement.

**C.    The notice plan complies with Rule 23(e) and due process.**

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1). Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B) "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997). The notice must state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B); *see also In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d at 567 ("settlement notices must 'present information about a proposed settlement neutrally, simply, and understandably'") (citation omitted).

The parties have developed a notice plan that will include direct mail notice to Settlement Class Members using address information Kroll Settlement Administration finds for class members using their phone numbers and a website that contains more detailed information about the case and the Settlement. Settlement Agreement § 4. Kroll Settlement Administration will

**Plaintiff's Unopposed Motion for Preliminary**
**Approval of Class Action Settlement**

send the postcard notice to Settlement Class Members directly through first class mail using the most recent address information available based on Sovereign Lending's records of telephone numbers and the USPS National Change of Address database. *Id.* § 4.4.2. In addition, Kroll Settlement Administration will establish and maintain a Settlement Website which will display, at a minimum, the operative complaint, Long Form notice, claim form, the Settlement Agreement, the preliminary approval order, Counsel's motion for fees, and all other filings and orders made in connection with settlement of this action. *Id*. § 4.3. Kroll Settlement Administration will also establish a toll-free number that Settlement Class Members can call for more information. *Id*. § 4.5.

The notices are drafted in plain English and are easy to understand. They include key information about the settlement, including the deadline to request exclusion or object to the settlement, and the date of the final approval hearing (and that the hearing date may change without further notice). The notices state the amount of the fees and costs Plaintiff's Counsel will request, the amount of the service payment Plaintiff will request, and the estimated costs of administration. The notices disclose that by participating in the Settlement, Settlement Class Members give up the right to sue Sovereign Lending for claims covered by the release. The notices direct Settlement Class Members to the settlement website for further information, where copies of the notices, the Settlement Agreement, the complaint, the opt-out form, and motions and orders relating to the Settlement will be posted. Settlement Agreement § 4.3. The notices identify Plaintiff's Counsel and provide contact information for the Settlement Administrator.

Settlement Class Members will have 90 days from the date of the preliminary approval order to submit claims, opt out of the Settlement Class, or to submit objections. *Id*. § 1.26. The claim form advises Settlement Class Members of the option between receiving a settlement payment by check or electronically. After final approval, the Settlement Administrator will mail checks to authorized claimants who requested an award by check. Authorized claimants who requested the award to be transmitted by electronic means will receive their payment through the

**Plaintiff's Unopposed Motion for Preliminary**
**Approval of Class Action Settlement**

digital payment option they select. Each authorized claimant will receive a *pro rata* share of the Net Settlement Fund. *Id*.

The parties request that the Court approve distributions in *cy pres* to the Electronic Privacy Information Center of any amounts remaining in the Settlement Fund after the 90-day period during which checks are negotiable. *Id*. §§ 1.9, 3.5, 3.7, 3.8. No funds will revert to Sovereign Lending. *Id*. § 1.36. A "*cy pres* remedy must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members. . . " *Lane v. Facebook, Inc.*, 696 F3d 811, 820-21 (9th Cir. 2012) (quotations omitted). The Electronic Privacy Information Center protects consumer interests with respect to various invasions of privacy and has been approved in several district courts as a *Cy Pres* recipient in TCPA matters.

The manner and content of the proposed Notice Plan complies with Rule 23 and due process.

**D.    The schedule following preliminary approval.**

The next steps in the settlement approval process are to schedule a final approval hearing, notify Settlement Class Members of the settlement and hearing, and provide class members with the opportunity to exclude themselves from, or object to, settlement. The parties propose the following schedule for final approval of the settlement:

| ACTION | DATE |
|---|---|
| Last day for Settlement Class Counsel to provide the Settlement Administrator the Class List | On or before 14 days after entry of this Order |
| Last day for the Settlement Administrator to publish the Settlement Website and begin operating a toll-free telephone line, email address, and P.O. Box to accept inquiries from Settlement Class Members | On or before 30 days after entry of this Order |

**Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement**

| **ACTION** | **DATE** |
|---|---|
| Settlement Administrator provides Notice to Settlement Class Members | On or before 30 days after entry of this Order |
| Last day for Settlement Class Counsel to file motion in support of Fees, Costs, and Expenses Award and apply for Service Payment | On or before 69 days after entry of this Order |
| Last day for Settlement Class Members to file Claim Forms, object, or request exclusion from the Settlement Class | On or before 90 days after entry of this Order |
| Last day for Settlement Class Counsel to file motion in support of Final Approval | On or before 21 days before Final Approval Hearing |
| Last day for Sovereign Lending to file optional brief in support of Settlement | On or before 7 days before Final Approval Hearing |
| Final Approval Hearing / Noting Date | At the Court's discretion, but no earlier than 135 days after the Preliminary Approval Order is entered. |
| Final Approval Order Entered | At the Court's discretion |

## V. CONCLUSION

Plaintiff respectfully requests that the Court take the following initial steps in the settlement approval process: (1) provisionally certify the proposed Settlement Class; (2) appoint Turke & Strauss LLP and Paronich Law, P.C. as Class Counsel; (3) designate Eugene Manaccio as the class representative; (4) grant preliminary approval of the settlement; (5) approve the proposed notice plan; (6) appoint Kroll Settlement Administration to serve as the Settlement Administrator; and (7) schedule the final fairness hearing and related dates.

RESPECTFULLY SUBMITTED AND DATED this 9th day of August, 2023.

TURKE & STRAUSS LLP

**Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement**

By:  /s/ Samuel J. Strauss
     Samuel J. Strauss, WSBA #46971
     TURKE & STRAUSS LLP
     936 North 34th Street, Suite 300
     Seattle, Washington 98103-8869
     Telephone: (608) 237-1775
     Facsimile: (608) 509-4423

     Anthony I. Paronich, *Admitted Pro Hac Vice*
     Email: anthony@paronichlaw.com
     PARONICH LAW, P.C.
     350 Lincoln Street, Suite 2400
     Hingham, Massachusetts 02043
     Telephone: (617) 485-0018
     Facsimile: (508) 318-8100

     *Attorneys for Plaintiff and the Proposed Class*

- 20
**Plaintiff's Unopposed Motion for Preliminary**
**Approval of Class Action Settlement**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## <u>CERTIFICATE OF SERVICE</u>

I, Samuel J. Strauss, hereby certify that on August 9, 2023, a true and correct copy of the foregoing **Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement** was served via CM/ECF filing on all parties and counsel of record.

DATED this 9th day of August, 2023.

TURKE & STRAUSS LLP

By: /s/ Samuel J. Strauss
  Samuel J. Strauss, WSBA #46971
  Email:  sam@turkestrauss.com
  613 Williamson St., Suite 201
  Madison, Wisconsin 53703
  Telephone: (608) 237-1775
  Facsimile: (608) 509-4423

- 21
**Plaintiff's Unopposed Motion for Preliminary**
**Approval of Class Action Settlement**