THE HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

EUGENE MANNACIO, on behalf of himself
and all others similarly situated,

              Plaintiff,

vs.

SOVEREIGN LENDING GROUP
INCORPORATED,

              Defendant.

Case No. 3:22-cv-05498-TMC

**PLAINTIFF'S MOTION FOR FINAL APPROVAL**

**NOTED FOR CONSIDERATION: FEBRUARY 27, 2024**

**Plaintiff's Motion for Final Approval**
113461.00602/126386656v.1

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

      A.    Mr. Mannacio's claims & Sovereign's defenses ................................. 2

      B.    Discovery and mediation ..................................................................... 3

      C.    Preliminary approval ........................................................................... 4

      D.    The notice program & the class's reaction ......................................... 5

III.  ARGUMENT ..................................................................................................... 7

      A.    The class should remain certified ........................................................ 7

      B.    The Court should finally approve the settlement under Rule 23 ........... 9

            1.    The Court should presume the settlement is "reasonable"
                  because it was negotiated at arm's length with experienced
                  counsel ..................................................................................... 9

            2.    The relief achieve is "adequate" considering this case's
                  strengths and risks ................................................................. 10

            3.    The settlement treats class members "equitably" .................... 14

            4.    The class's reaction supports settlement................................ 15

IV.   CONCLUSION................................................................................................. 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# TABLE OF AUTHORITIES

**Cases**

*Abdeljalil v. Gen. Elec. Capital Corp.*,
    306 F.R.D. 303, 311 (S.D. Cal. 2015) ...................................................... 11

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
    No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) ...................................................... 10

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245, 257 (N.D. Cal. 2015)...................................................... 10

*Blair v. CBE Grp., Inc.*,
    309 F.R.D. 621, 631 (S.D. Cal. 2015) ...................................................... 11

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016)...................................................... 12

*Cordoba v. DIRECTV, LLC*,
    942 F.3d 1259 (11th Cir. 2019) ...................................................... 13

*Desai v. ADT Sec. Servs., Inc.*,
    Case No. 1:11-cv-01925 (N.D. Ill. Feb. 14, 2013) ...................................................... 11

Ellis v. Costco Wholesale Corp.,
    657 F.3d 970, 979–80 (9th Cir. 2011) ...................................................... 7

*Estrada v. iYogi, Inc.*,
    No. 2:13-01989 WBS CKD (E.D. Cal. Oct. 6, 2015)...................................................... 10

*Evans v. Linden Rsch., Inc.*,
    No. C-11-01078 DMR, 2014 U.S. Dist. (N.D. Cal. Apr. 29, 2014) ...................................................... 15

*Golan v. FreeEats.com*, *Inc.*,
    930 F.3d 950 (8th Cir. 2019) ...................................................... 12

*Hudson v. Libre Tech. Inc.*,
    WL 2467060, at *9 (S.D. Cal. May 12, 2020)...................................................... 14

*Ikuseghan v. Multicare Health Sys.*,
    No. 3:14-cv-05539-BHS (W.D. Wash. July 25, 2016)...................................................... 9

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935, 946 (9th Cir. 2011) ...................................................... 9

*In re Capital One Tel. Consumer Prot. Act Litig. (In re Capital One)*,
 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) ................................................. 11

*In re Hyundai and Kia Fuel Econ. Litig.*,
 926 F.3d at 559 ........................................................................................... 8

*In re Linkedin User Privacy Litig.*,
 309 F.R.D. 573, 583 (N.D. Cal. 2015) ...................................................... 7

*In re Online DVD-Rental Antitrust Litig.*,
 779 F.3d 934, 944-45 (9th Cir. 2015) ...................................................... 15

*In re Tableware Antitrust Litig.*,
 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) ......................................... 14

*Jones v. Royal Administration*,
 887 F.3d 443 (9th Cir. 2018) ................................................................... 12

*Keil v. Lopez*,
 862 F.3d 685, 696-97 (8th Cir. 2017) ...................................................... 15

*Kramer v. Autobytel, Inc.*, et al.,
 No. 10-cv-2722, Dkt (N.D. Cal. 2012) ................................................... 10

*Kramer v. B2Mobile*,
 10-CV2722-CW (N.D. Cal.) ..................................................................... 11

*Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*,
 244 F.3d 1152, 1163 (9th Cir. 2001) ......................................................... 8

*Malta v. Fed. Home Loan Mortg. Corp.*,
 10-CV-1290-BEN (S.D. Cal.) ................................................................... 11

*McCurley v. Royal Sea Cruises, Inc.*,
 No. 17-cv-00986-BAS-AGS (S.D. Cal. Jan. 29, 2021). ......................... 12

*McHorney v. Gamestop Corp.*,
 No. CV 09-2879-GHK (MANx) (C.D. Cal. June 17, 2010) ..................... 14

*Moore v. Verizon Commc'ns Inc.*,
 No. C 09-1823 SBA, 2013 U.S. Dist., (N.D. Cal. Aug. 28, 2013) .......... 15

*Morgan v. U.S. Xpress, Inc.*,
 No. 3:17-CV-00085 (W.D. Va. July 25, 2018) ........................................ 12

**Plaintiff's Motion for Final Approval**
113461.00602/126386656v.1

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

   221 F.R.D. 523, 526 (C.D. Cal. 2004) ............................................................ 13, 15

*Ortiz v. Fiberboard Corp.*,

   527 U.S. 815, 852 (1999) ........................................................................................ 9

*Rinky Dinky v. Elec. Merchant Sys.*,

   No. C13-1347-JCC (W.D. Wash. Apr. 19, 2016) ................................................ 11

*Rodriguez v. West Publ'g Corp.*,

   563 F.3d 948, 966 (9th Cir. 2009) ...................................................................... 13

*Rose v. Bank of Am. Corp.*,

   2014 WL 4273358 (N.D. Cal., 2014) .................................................................. 11

*Ruch v. AM Retail Group, Inc.*,

   No. 14-cv-05352-MEJ (N.D. Cal. Mar. 24, 2016) ................................................ 9

*Steinfeld v. Discover Fin. Servs.*,

   No. C 12-01118 (N.D. Cal. Mar. 10, 2014) ........................................................ 10

*Tomeo v. CitiGroup, Inc.*,

   No. 13 C 4046 (N.D. Ill. Sept. 27, 2018) ............................................................ 12

*Touhey v. United States*,

   No. EDCV 08-01418-VAP (RCx),(C.D. Cal. July 25, 2011) .............................. 15

*Trenz v. On-Line Adm'rs*,

   No. 2:15-cv-08356-JLS-KS (C.D. Cal. Aug. 10, 2020) ...................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,

   564 U.S. 338, 350 (2011) ........................................................................................ 7

*Whitaker v. Bennett Law, PLLC*,

   No. 13-cv-3145-L(NLS), 2014 U.S. Dist. (S.D. Cal. Oct. 27, 2014) ...................... 7

*Wolin v. Jaguar Land Rover N. Am., LLC*,

   617 F.3d 1168, 1175 (9th Cir. 2010) .................................................................... 8

**Other Authorities**

4 Newberg on Class Actions, § 11:48 (4th ed. 2002) .................................................. 15

**Rules**

221 F.R.D. at 529 ........................................................................................................ 15

1

2

## I.    INTRODUCTION

3    If approved, the parties' settlement will deliver $165 to $175 to every class member that

4    claimed benefits, a result that dwarfs those achieved in TCPA settlements across the country. This

5    is after the parties' notice program reached over 98% of the class, with only one class member

6    opting out and no members objecting. The claims rate, 6%, fell in line with what plaintiff expected

7    when he moved the Court to preliminarily approve the settlement, and consists with claims rates

8    found in other class actions. If the Court finds these outcomes and the settlement's terms are "fair,

9    reasonable, and adequate"—as it did in its preliminary approval order—Sovereign will pay every

10    dollar from the $500,000 settlement fund, including all approved administrative costs, attorney

11    fees, and service award. Given the results achieved and the relief secured, the Plaintiff requests

12    that the Court approve the settlement and order the parties to disburse its benefits.

13

14    As background, Mr. Mannacio sued Sovereign because he alleges it calls consumers

15    without their consent to telemarket its loans. That triggered claims under the TCPA because Mr.

16    Mannacio and those consumers listed their numbers on the National "Do-Not-Call" Registry. Mr.

17    Mannacio's case aimed to recover those penalties for a class with 19,648 members.

18

19    But Sovereign defended itself on grounds that undermined Mr. Mannacio's case. To start,

20    it said that Mr. Mannacio had no case because he had "consented" to its calls. While Mr. Mannacio

21    denied the claim, the case would fail if proven. And even if he defeated that defense, Sovereign

22    also raised it as a reason to deny certifying the class. Indeed, if it could show that other class

23    members consented to its calls, that would require an "individualized" inquiry that could

24    predominate over class issues. And last, Sovereign said that even if some calls violated the TCPA,

25    it lacked any liability for them because vendors had called consumers on its behalf. If true, Mr.

26

27

- 1

**Plaintiff's Motion for Final Approval**

113461.00602/126386656v.1

Mannacio would have recovered nothing from Sovereign and been left to pursue vendors that lacked the means to pay a settlement or damages.

Despite those hurdles, Mr. Mannacio overcame them and leveraged a settlement that secures the relief he sought to achieve. That includes cash payments to all members who submitted an approved claim. Depending on how the Court awards plaintiff's requests for costs, fees, and as service award, Mr. Mannacio anticipates claimants will receive around $165 to $175 per class member. To put that in context, Mr. Mannacio cites cases below showing that TCPA claimants often receive far less in cases with similar claims rates.

As a result, the Court should approve the settlement and allow the parties to distribute payments for three reasons. *First*, the Court certified the class for settlement purposes during preliminary approval and nothing has changed since that finding. *Second*, the settlement is "fair, adequate, and reasonable," under Rule 23 and the standards set by the Ninth Circuit.

## II.    BACKGROUND

### A.    Mr. Mannacio's claims & Sovereign's defenses

Sovereign is a California corporation that sells loans to "mortgage and refinancing clients." Doc. 1 ("Compl.") ¶ 14. To solicit customers, Sovereign relies on telemarketing. *Id.* ¶ 15. When telemarketing its loans, Sovereign knows it must comply with the TCPA, including its rules that prohibit calling consumers listed on the National Do-Not-Call Registry and those who demand Sovereign stop calling them. Even so, Mr. Mannacio alleges Sovereign never implemented or enforced its TCPA policies, allowing its agents to call consumers listed on the National Registry and ignoring their demands that the calls stop. *Id.* ¶¶ 23-31. Indeed, consumers complained about the calling misconduct online, claiming that Sovereign had "bombarded" them with calls. *Id.*

Because Sovereign would not listen to consumers' demands that the calls stop, Mr. Mannacio sued the company under the TCPA in California. Id. In so doing, he defined his class to

include all consumers that Sovereign called despite their DNC designations. *Id.* ¶ 32. Their claims all fell under the same TCPA provision prohibiting calls to consumers listed on the DNC registry. *Id.* ¶¶ 41-45. Under that claim, Mr. Mannacio demanded "a minimum of $500 in damages, and up to $1,500 in damages, for each violation." *Id.* ¶ 44.

In response, Sovereign denied wrongdoing. Doc. 24. It also asserted "affirmative" defenses that threatened to end Mr. Mannacio's class action before it started. Id. First, it said consumers had invited the calls through "express written consent." *Id.* ¶ 50. And second, Sovereign disavowed any responsibility for the calls because it said, "entities other than Sovereign" had called the class, claiming it had "no responsibility or liability" even if the calls violated the TCPA. *Id.* ¶ 53. And last, it denied that Mr. Mannacio could ever certify the class even assuming he could prove liability for his claims. *Id.* ¶¶ 32-40. Altogether, these defenses erected hurdles that could topple Mr. Mannacio's case at any stage.

In July 2022, the parties agreed to transfer the case from California to this Court, where another case against Sovereign was pending. Doc. 45. Following that transfer, the parties exchanged discovery over the next year.

**B.    Discovery and mediation**

In discovery, Mr. Mannacio collected facts needed to support his claims and understand the landscape affecting them. Joint Dec. ¶ 2. That effort revealed how many class members there were: 19,648. *Id.* ¶ 4. It also confirmed Sovereign intended to defend itself on two grounds. *Id.* ¶ 2. First, Sovereign contended that class members had, in fact, given their numbers to its agents "in various ways," thus inviting the calls despite their DNC designations. *Id.* While Mr. Mannacio denied the claim, if the "trier of fact disagreed with Plaintiff on this legal issue, the Settlement Class would receive nothing." *Id.* Compounding the risk, even if Mr. Mannacio prevailed on the

defense for himself, he would still have to show that he could certify the class despite it. *Id.* Second, Sovereign denied that it was the entity that called consumers. If proven, Mr. Mannacio would need to prove his case under a "vicarious liability" theory. Altogether, Mr. Mannacio considered these defenses "fundamental" threats to his case.

While Mr. Mannacio believed he would prevail over these risks, he recognized the uncertainty in litigating them through trial. Thus, Mr. Mannacio was "confident in the strength of his case but also pragmatic about the risks inherent in litigation and various defenses available to the Defendant." *Id.* ¶ 10. For that reason, when the parties discussed mediating the case, Mr. Mannacio invited the chance to avoid that uncertainty. *Id.* ¶ 3.

In May 2023, the parties retained Judge S. James Ortero (Ret.) to facilitate a "day-long, arms-length mediation." *Id.* ¶ 3. Though that effort did not result in settling the case that day, Judge Ortero developed a framework for settlement that the parties refined over three months. Id. That effort paid off, as the parties finalized their agreement in August 2023. Id. Its terms gave Mr. Mannacio the right to request his fees, costs, and a service award. Doc. 62-1. That contemplated "one-third of the Settlement Fund" for fees, his costs, and a $10,000 award. Id. But the parties agreed the Court need not award those amounts to approve the settlement, and any amounts not awarded would go to the class. *Id.* ("The finality or effectiveness of the settlement will not be dependent on the Court awarding Settlement Class Counsel any particular amount on their Fees, Costs, and Expenses Award.")

## C.    Preliminary approval

In August 2023, Mr. Mannacio moved the Court to "preliminarily" approve the settlement and certify the class. Doc. 61. In so doing, Mr. Mannacio laid out the reasons justifying settlement, the parties' plan to notify the class, and proposed a schedule to enact the settlement's terms. *Id.*

- 4

**Plaintiff's Motion for Final Approval**

113461.00602/126386656v.1

While the Court considered the settlement, it directed the parties to "provide an additional declaration setting forth more detail regarding the costs of administration." *Id*. ¶ 67. The parties did so, and the Court then granted their motion. Doc. 69. In so doing, the Court held that Mr. Mannacio's request for fees, costs, and a service award was "in line with other cases." *Id*.

**D.    The notice program & the class's reaction**

After the Court approved the parties' notice program, it authorized the settlement administrator to notify the class under the program terms. *See* Fenwick Decl. The administrator was Kroll Settlement Administration LLC, a company that has succeeded in notifying class members about settlements in "more than 3,000 cases." *Id*. ¶ 2.

To notify the class here, Kroll started by alerting all attorneys general under the Class Action Fairness Act, putting them on notice about the settlement's terms under the Act. *Id*. ¶ 4. It then requested a data file from defendant with 19,648 telephone numbers belonging to class members. *Id*. ¶ 5. Under the settlement's terms, Kroll needed to match those numbers with class member names and mailing addresses, as the notice program provided for postcard notice. *Id*. Using two "commercially available databases," Kroll found 19,475 names and addresses, allowing it to process that data through the USPS's National Change of Address database and update any changed addresses. *Id*.

Before mailing out postcards, prepared three resources for class members. First, it set up a PO Box  to receive all claims, opt-out forms, and objections from class members. *Id*. ¶ 6. Second, it set up a toll-free number with information and live operators to answer questions and provided information. *Id*. ¶ 7. That service received 71 calls. *Id.* And last, Kroll built a website that hosted all information related to this settlement, including "important dates and deadlines, answers to frequently asked questions, copies of the operative Complaint, Settlement Agreement, Preliminary

- 5
**Plaintiff's Motion for Final Approval**
113461.00602/126386656v.1

Approval Order, Long-Form Notice, Claim Form, Opt-Out Form, and Settlement Class Counsel's motion for a Fees, Costs, and Expenses Award, contact information for the Settlement Administrator, and allowed Settlement Class Members an opportunity to file a Claim Form or an Opt-Out Form online." *Id*. ¶ 8, Exs. C, D, E, and F. The site also listed an email for members to claim benefits online.

With this infrastructure, by November 2023, Kroll could notify the class about the settlement's terms. It mailed out 19,475 postcards by first-class mail, with information directing members to the "Long-Form Notice, Claim Form, and Opt-Out[.]" *Id*. ¶ 10. Of those, the USPS returned 82 with a forwarding address and 1,529 as "undeliverable as addressed, without a forwarding address." *Id*. ¶ 12. In turn, Kroll performed an "advanced address search" and re-mailed notices to all forwarding addresses and those found through the search. *Id*. ¶ 12. In total, Kroll states that the "Postcard Notices likely reached 19,097 of the 19,475 persons to whom Postcard Notices were mailed[,]" resulting in a 98% reach rate. *Id*. ¶ 13. As Kroll notes, that rate "is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches over 70% of targeted class members is considered a high percentage[.]" *Id*. ¶ 13.

In response, class members overwhelmingly favored the settlement. Kroll received 990 claim forms by mail and 189 forms through the settlement website. *Id*. ¶ 15. In total, 1,179 class members have claimed settlement benefits, with Kroll processing those claims for approval. *Id*. ¶ 16. Only one class member opted-out and no class members objected. *Id*. ¶ 19.

Altogether, these efforts cost Kroll $41,869.87 through this stage, and Kroll estimates it will cost $58,000.00 to finish administering the settlement if it is approved. These costs are based

on Kroll's "many years of experience administering class action settlements[,]" and should be approved given the notice program's success. Kroll Dec. ¶ 21.

## III.    ARGUMENT

### A.    The class should remain certified

The Court certified the class for settlement purposes in its preliminary approval order and nothing has changed since the Court entered the order. Still, Mr. Mannacio will briefly recap why the Court should finally certify the class when approving the settlement.

First, the class meets all requirements under Rule 23(a). See Fed. R. Civ. P. 23(a). That includes numerosity, commonality, typicality, and adequacy. Id; Ellis v. Costco Wholesale Corp., 657 F.3d 970, 979–80 (9th Cir. 2011). The class here is over 19,000 members, exceeding what is needed to satisfy "numerosity." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 583 (N.D. Cal. 2015) (citation omitted) ("[W]here the number of class members exceeds forty, and particularly where class members number in excess of one hundred, the numerosity requirement will generally be found to be met.").

The class satisfies commonality because their claims "depend upon a common contention" that require "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The questions at issue here are all "common," including whether Sovereign called the class members, whether their numbers were listed on the Registry, and whether Sovereign incurred liability under the TCPA for those calls. Likewise, Mr. Mannacio's claims are "typical" of the class's claims, as they arise from the same conduct. *See* Rule 23(a)(3); *see, e.g.*, *Whitaker v. Bennett Law, PLLC*, No. 13-cv-3145-L(NLS), 2014 U.S. Dist. LEXIS 152099, at *13 (S.D. Cal. Oct. 27, 2014) (finding typicality when plaintiff's claim "revolves exclusively around [the defendant's] conduct as it

specifically relates to the alleged violations of the TCPA"). And Mr. Mannacio is "adequate" to represent the class because he will "fairly and adequately" protect their interests. See Rule 23(a)(4). The settlement process confirmed there are no conflicts between the class, Mr. Mannacio, or his counsel. And although Mr. Mannacio requests a service award, the Court's ruling on that request will not impact whether the class receives benefits under the settlement, removing any conflict that could arise.

Second, the issues at stake predominate under Rule 23(b) and resolving them on a class basis is "superior" than an individual one. (requiring that "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the controversy."). When applying this rule to settlement classes, the requirement is "readily met" when "class members were exposed to uniform . . . misrepresentations and suffered identical injuries within only a small range of damages." *See In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d at 559. That is the case here, as the conduct alleged under the TCPA implicated uniform conduct causing a "small range of damages." *Id.*

Resolving those questions classwide is "superior" to the alternative as class members will not pursue TCPA actions on their own, depriving them of relief without the parties' settlement. *See Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").

As a result, there is no reason to disturb the Court's order certifying the Settlement Class.

**Plaintiff's Motion for Final Approval**
113461.00602/126386656v.1

**B.     The Court should finally approve the settlement under Rule 23**

Like certification, plaintiff's case for approving the settlement has only strengthened following class notice. Indeed, the results achieved satisfy Rule 23(e)'s factors for settlement approval. That includes whether plaintiff was "adequate" when representing the class, if there were arm's length negotiations, and the "adequate" relief considering the case's costs, risks, notice program, attorney fee and award allocation, any "side" agreements, and equitable considerations.

Likewise, the settlement and the class's reaction to it affirms that it satisfies the Ninth Circuit's seven factors for approval. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Those include: (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. Id.

Because Rule 23 and the Ninth Circuits factors overlap, Mr. Mannacio combines his analysis of them below.

1.     The Court should presume the settlement is "reasonable" because it was negotiated at arm's length with experienced counsel

Courts presume settlements like this are "reasonable" if negotiated at "arm's length:" "[a]rm's length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements." *Ikuseghan v. Multicare Health Sys.*, No. 3:14-cv-05539-BHS, 2016 WL 3976569, *3 (W.D. Wash. July 25, 2016); s*ee also Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 852 (1999). ("[O]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining."). Here, Judge Judge S. James Otero (Ret.) from JAMS facilitated the

- 9

**Plaintiff's Motion for Final Approval**
113461.00602/126386656v.1

parties' mediation and ensured the parties deliberated over the settlement's terms without any collusion. *See Ruch v. AM Retail Group, Inc.*, No. 14-cv-05352-MEJ, 2016 WL 1161453, at 11 (N.D. Cal. Mar. 24, 2016) (holding that the "process by which the parties reached their settlement," which included "formal mediation … weigh[ed] in favor of preliminary approval"); Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment ("the involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests").

This is not to mention counsel's experience in litigating TCPA class actions. As plaintiff's counsel noted during preliminary approval, the class benefited from their experience. Doc. 62 at ¶¶8-9, Doc. 63. That they recommend the settlement also favors approval, as the Court is "entitled to, and should, rely upon the judgment of experienced counsel for the parties." *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015). The notice program and administration raised no "red flags" to suggest either Mr. Mannacio or his counsel put their self-interest before the class's; indeed, the settlement guarantees counsel nothing, as its terms may be approved without the Court granting their fee request. Settlement Agreement §§ 1.32, 3. But given the potential for fee recovery, counsel were also motivated to pursue the largest possible recovery for the class.

For these reasons, the Court should presume the settlement is approvable.

2.    <u>The relief achieve is "adequate" considering this case's strengths and risks</u>

This settlement exceeds what claimants can expect in TCPA settlements, speaking to its "adequacy" under the circumstances. *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants

received $40); *Kramer v. Autobytel, Inc.*, et al., No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) (approving TCPA settlement providing for a cash payment of $100 to each class member); *Estrada v. iYogi, Inc.*, No. 2:13-01989 WBS CKD, 2015 WL 5895942, at 7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Malta v. Fed. Home Loan Mortg. Corp.*, 10-CV-1290-BEN (S.D. Cal.) (after final approval, each of the 120,547 claimants that made a timely and valid claim as well as the 103 claimants that made a late claim received the sum of $84.82); *Kramer v. B2Mobile*, 10-CV2722-CW (N.D. Cal.) (in TCPA settlement each claimant was to be paid $100), *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal., 2014) (approving TCPA settlement where claimants were estimated to receive $20 to $40); *Desai v. ADT Sec. Servs., Inc.*, Case No. 1:11-cv-01925, Dkt. No. 229 (N.D. Ill. Feb. 14, 2013) (estimating payments between $50 and $100); *Rinky Dinky v. Elec. Merchant Sys.*, No. C13-1347-JCC, Dkt. No. 151 (W.D. Wash. Apr. 19, 2016) ($97 payments); *In re Capital One Tel. Consumer Prot. Act Litig. (In re Capital One)*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (approving settlement where each class member received $34.60 per claimant).

This relief stands out considering the risks involved in litigating the case. As Mr. Mannacio explained in his motion to preliminarily approve the settlement, Sovereign defended itself on grounds that could have eliminated the case. The first was Sovereign's "consent" defense asserting that the class had consented to its calls. Doc. 62, ¶11. Although an "affirmative defense" that required Sovereign to prove it applied, the Court could find it raises an issue that prevents it from certifying the class. *Id.*; *compare, e.g., Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 631 (S.D. Cal. 2015) (denying certification where "extensive individual factual inquiries" were required "to determine whether a particular class member provided express consent"), *with Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 311 (S.D. Cal. 2015) (granting certification where questions

of fact and law predominate over individualized issues). And even if Mr. Mannacio survived that challenge, a jury could find that either Mr. Mannacio or the class had consented to the calls, a result that would end the case entirely.

For example, whether cellular telephones are properly subject to the TCPA's Do-Not-Call provision is an often-litigated issue. *See, e.g., Morgan v. U.S. Xpress, Inc.,* No. 3:17-CV-00085, 2018 WL 3580775, at *2–3 (W.D. Va. July 25, 2018) (granting motion to dismiss because Plaintiff failed to plausibly allege the calls were made to a "residential telephone line" within the meaning of the relevant section of the TCPA). The *Morgan* court went so far as to say: "It would be odd if a cell phone, largely used outside the home and at work, became a residential line just because it was brought home and thereby erased those statutory categories." *Id.* Defendant has also maintained that all the calls at issue here were made by their vendors, and that any calls that violated the TCPA are breaches of those vendors' contractual obligations. The Supreme Court in *Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663 (2016), held that traditional agency and vicarious liability principles apply for liability under the TCPA. Several TCPA cases have been dismissed for failure to establish the defendant's knowledge of a vendor's illegal conduct. *See e.g. Jones v. Royal Administration*, 887 F.3d 443 (9th Cir. 2018). Indeed, even TCPA cases that were certified have then been dismissed on summary judgment due to vicarious-liability issues. *See, e.g., McCurley v. Royal Sea Cruises, Inc.,* No. 17-cv-00986-BAS-AGS, 2021 WL 312005 (S.D. Cal. Jan. 29, 2021).

Class certification is also far from automatic in TCPA cases. *See, e.g., Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation). In addition, at least some courts view awards of aggregate, statutory damages under the TCPA with skepticism and

**Plaintiff's Motion for Final Approval**

reduce such awards on due-process grounds, even after a plaintiff has prevailed on the merits. *See, e.g., Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) (reducing TCPA statutory damages in class action to $10 per call).

Even though Plaintiff believes that this case is appropriate for class-action treatment, Courts have decertified TCPA classes for a variety of reasons. *See, e.g., Cordoba v. DIRECTV, LLC,* 942 F.3d 1259 (11th Cir. 2019) (decertifying TCPA class due to predominance issues related to standing); *Trenz v. On-Line Adm'rs*, No. 2:15-cv-08356-JLS-KS, 2020 WL 5823565 (C.D. Cal. Aug. 10, 2020) (same, but for individualized issues of consent). Any decision to grant certification absent settlement would be subject to the delay and uncertainty of a Rule 23(f) appellate challenge before the class could proceed to trial. And, an appeal from any verdict or judgment in favor of the class could likewise follow. If a class could not be certified, then it would leave few, if any, class members with both the resources and financial incentive to chase a maximum $500 award for each statutory violation on their own, with the practical result of no recovery by anyone.

This is not to mention the time and expense that litigating this case further would have cost. Although this is a "small" case, that does not mean the costs in litigating it would be proportionally "small," nor would it necessarily proceed through the litigation process faster. Delaying relief to the class—on the chance that trial might deliver more—is not a risk worth taking when considering the relief achieved. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." (citation omitted)). In other words, certainty and finality adds to this settlement's value.

**Plaintiff's Motion for Final Approval**
113461.00602/126386656v.1

1   This is not to say that Mr. Mannacio does not believe his case would fail at class

2   certification or trial—he believes the opposite. But given the settlement's terms, it would defy

3   reason to pass up a chance to deliver claims relief now, rather than years from now on the

4   speculation that they may get more. As a result, the Court should find the relief is "adequate"

5   considering the case's strength's and risks.

6

7        3.    The settlement treats class members "equitably"

8        Under the settlement, the "apportionment of relief among class members takes appropriate

9   account of differences among their claims, and whether the scope of the release may affect class

10  members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory

11  comm.'s note (2018). Indeed, the settlement does not "improperly grant preferential treatment to

12  class representatives or segments of the class." *Hudson v. Libre Tech. Inc.*, WL 2467060, at *9

13  (S.D. Cal. May 12, 2020) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079

14  (N.D. Cal. 2007).

15

16       This is because the harm the class suffered is the same and arises from the same

17  misconduct. While some class members may have, for instance, received more violative calls from

18  Sovereign than others, nothing suggests those differences defeated distributing benefits equally.

19  *McHorney v. Gamestop Corp.*, No. CV 09-2879-GHK (MANx), 2010 U.S. Dist. LEXIS 150900,

20  at *13 (C.D. Cal. June 17, 2010) (noting that the "the adequacy of an allocation plan turns on

21  whether counsel ha[ve] properly apprised [themselves] of the merits of all claims, and whether the

22  proposed apportionment is fair and reasonable in light of that information").

23

24       And nothing in the settlement favors Mr. Mannacio over the class. Again, although he is

25  requesting a service award, that request is not "inequitable." As described in his request for fees

26  and the award, Mr. Mannacio explains that the award recognizes his service to the class. What's

27

- 14
**Plaintiff's Motion for Final Approval**

more, the settlement does not entitle him to an award, and the class will receive their payments no matter what the Court awards him.

As a result, the Court should find the settlement is "equitable."

### 4.    The class's reaction supports settlement

No class members objected and only one opted out from the settlement—showing the class approves it. It is "established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529; 4 Newberg on Class Actions, § 11:48 (4th ed. 2002) ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections [citations omitted]").

This is warranted considering the settlement. Class counsel negotiated it after discovery with a mediator, ensuring they had the information to understand the landscape affecting settlement with a third party to ensure all negotiations were at arm's length. Those efforts led to claimants receiving $165 to $175 per claim. Kroll Dec. ¶ 18. Indeed, at 6%, the claims rate exceeded what courts expect in class actions. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (approving settlement with a 3.4% claims rate); *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 122901, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (3% claims rate); *Evans v. Linden Rsch., Inc.*, No. C-11-01078 DMR, 2014 U.S. Dist. LEXIS 59432, 2014 WL 1724891, at *4 (N.D. Cal. Apr. 29, 2014 (4.3% claims rate); *Touhey v. United States*, No. EDCV 08-01418-VAP (RCx), 2011 U.S. Dist. LEXIS 81308, 2011 WL 3179036, at *7-8 (C.D. Cal. July 25, 2011) (2% claims rate). As the Eighth Circuit notes: "a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness." *Keil v. Lopez*, 862 F.3d 685, 696-97 (8th Cir. 2017)

As a result, this factor favors settlement.

## IV.    CONCLUSION

For these reasons, Plaintiff respectfully requests this Court finally approve the settlement.

RESPECTFULLY SUBMITTED AND DATED this 6th day of February, 2024.

TURKE & STRAUSS LLP

By:  /s/ Samuel J. Strauss
     Samuel J. Strauss, WSBA #46971
     TURKE & STRAUSS LLP
     936 North 34th Street, Suite 300
     Seattle, Washington 98103-8869
     Telephone: (608) 237-1775
     Facsimile: (608) 509-4423

     Anthony I. Paronich, *Admitted Pro Hac Vice*
     Email: anthony@paronichlaw.com
     PARONICH LAW, P.C.
     350 Lincoln Street, Suite 2400
     Hingham, Massachusetts 02043
     Telephone: (617) 485-0018
     Facsimile: (508) 318-8100

     *Attorneys for Plaintiff and the Proposed Class*

**Plaintiff's Motion for Final Approval**
113461.00602/126386656v.1

1

## CERTIFICATE OF SERVICE

2

I, Samuel J. Strauss, hereby certify that on February 6, 2024, a true and correct copy of

3

the foregoing **Plaintiff's Motion for Final Approval** was served via CM/ECF filing on all

4

parties and counsel of record.

5

DATED this 6th day of February, 2024.

6

7                                   TURKE & STRAUSS LLP

8                                   By: /s/ Samuel J. Strauss
9                                        Samuel J. Strauss, WSBA #46971
                                         Email:  sam@turkestrauss.com
10                                       613 Williamson St., Suite 201
                                         Madison, Wisconsin 53703
11                                       Telephone: (608) 237-1775
                                         Facsimile: (608) 509-4423
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

- 17
**Plaintiff's Motion for Final Approval**
113461.00602/126386656v.1